NATIONAL BLACK MEDIA COALITION and The New York Affiliate, National Black Media Coalition, Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,

National Association of Broadcasters, Intervenor.

No. 413, Docket 86–4073.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1986.

Decided June 24, 1987.

David E. Honig, Berlin, Maryland (Robert T. Perry, Media Law Clinic, New York Law School, New York City, of counsel), for petitioners.

Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C. (Douglas H. Ginsburg, Asst. Atty. Gen., Catherine G. O'Sullivan, Andrea Limmer, U.S. Dept. of Justice, Jack D. Smith, Gen. Counsel, David Silberman, F.C.C., of counsel), for respondents.

(Henry L. Baumann, Barry D. Umansky, Robert E. Branson, Nat. Ass'n of Broadcasters, Washington, D.C., of counsel), for intervenor.

Before VAN GRAAFEILAND and PIERCE, Circuit Judges, and LASKER, District Judge.[*]

PIERCE, Circuit Judge:

The National Black Media Coalition and its New York Affiliate (collectively "petitioners" or "NBMC") petition for review of the Federal Communication Commission's ("FCC") orders in *In re Implementation of BC Docket 80–90 to Increase the Availability of FM Broadcast Assignments, Second Report and Order*, 101 F.C.C.2d 638 (1985) ("*Second Report and Order*"), *on reconsideration*, — F.C.C.2d ——, 59 Rad.Reg.2d (P & F) 1221 (1986). Petitioners' core claim is that the portions of the FCC orders that afford "daytimer" radio station operators a preference in comparative proceedings relating to the licensing of FM radio channels constitute an abuse of discretion because their effect is to reduce or eliminate opportunities for minorities to receive such licensing. We deny the petition for review and affirm the FCC's orders.

## I.

Daytime-only AM licensees ("daytimers") are AM band radio broadcasters who for technical reasons may only broadcast during daylight hours. *See generally WBEN, Inc. v. United States*, 396 F.2d 601, 605–06

(2d Cir.) (Friendly, J.) (explaining technical restrictions), *cert. denied*, 393 U.S. 914, 89 S.Ct. 238, 240, 21 L.Ed.2d 200 (1968). The FCC has found that daytimers have provided excellent service to the localities they serve despite the financial disadvantage of operating only during the day. In order to improve the daytimers' lot, and concomitantly improve service to communities served by daytimers, the FCC has expanded the hours daytimers may broadcast to the extent it deems technically feasible. *See Second Report & Order*, 101 F.C.C.2d at 643–44.

Believing that this expansion still left daytimers in a poor competitive position, the National Telecommunications and Information Administration ("NTIA"), in a petition for rulemaking filed with the FCC in September 1981, suggested that the FCC consider giving daytimers some form of consideration in comparative proceedings for new FM facilities. The comparative proceeding is the means by which the FCC chooses from among competing applicants for broadcast licenses. In response, in August 1982 the FCC released a notice of rulemaking in Docket 82–538 ("the 1982 Docket") which requested comments on enumerated methods for assisting daytimers. *See In re Hours of Operation of Daytime-Only AM Broadcast Stations*, 47 Fed.Reg. 38,937 (published Sept. 3, 1982) ("*Notice of Rulemaking in the 1982 Docket*"). Among other proposals, this notice suggested giving a preference to daytimers applying for FM stations. *Id.* at 38,940–41. In a decision in the 1982 docket, the Commission deferred consideration of this particular method of assisting daytimers to a later date. *See In re Hours of Operation of Daytime-Only AM Broadcast Stations*, 95 F.C.C.2d 1032, 1032 n. 1 (1983), *on reconsideration*, 97 F.C.C.2d 657 *and* 99 F.C.C.2d 1087 (1984).

Meanwhile, the FCC was pursuing another rulemaking proceeding with the purpose of increasing the number of commercial

---

[*] Hon. Morris E. Lasker, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

FM stations. In this other proceeding, known as Docket 80–90, the Commission changed certain allocation rules in order to create approximately six hundred FM stations. *See In re Modification of FM Broadcast Station Rules to Increase the Availability of Commercial FM Broadcast Assignments,* 94 F.C.C.2d 152 (1983), *on reconsideration,* 97 F.C.C.2d 279 (1984). Next, the Commission gave notice of yet another proceeding, Docket 84–231 ("the 1984 Docket"), to allocate among communities the six hundred additional FM stations made available by Docket 80–90. *See Notice of Proposed Rule Making in Docket 84–231,* 49 Fed.Reg. 11,214 (published Mar. 26, 1984) (*"Notice of Rulemaking in the 1984 Docket"*). The notice sought comments on whether daytimers should be granted such "special consideration" in comparative proceedings as, *inter alia,* "a preference ... over other competing applicants for an FM channel newly assigned to the same community." *Id.* at 11,217. The notice suggested that such a preference might be necessary because "[e]xisting comparative criteria could entitle competing applicants for such FM facilities to a diversification preference over daytime-only licensees, thus potentially foreclosing a means by which these experienced broadcasters could expand their service to the public." *Id.* (footnote omitted). The "diversification preference" reflects the Commission's long held policy that a "factor of primary significance" in the comparative proceeding is the goal of achieving "maximum diffusion of control of the media of mass communications." *Policy Statement on Comparative Broadcast Hearings,* 1 F.C.C.2d 393, 394 (1965) (*"1965 Policy Statement"*). Preference presently is extended to, *inter alia,* minority-owned applicants and local residents. *See Second Report & Order,* 101 F.C.C.2d at 645.

The *Notice of Proposed Rulemaking in the 1984 Docket* specifically mentioned giving special consideration only to daytimers in comparative proceedings for those new FM stations which were to be created by Docket 80–90. However, the Commission already had under consideration in the 1982 Docket the issue of whether daytimers should receive special consideration in all comparative proceedings for any new FM stations created in the future. In its first report and order in the 1982 Docket, the Commission had deferred consideration of the issue. *See* 95 F.C.C.2d at 1032 n. 1. On reconsideration, the Commission stated that it would take up the issue in the 1984 Docket, the proceeding commenced for the purpose of allocating the six hundred FM stations created by Docket 80–90. The Commission further stated that "[p]ersons wishing to comment further on [the issue] may do so in response to [the] outstanding *Notice of Proposed Rulemaking* in [the 1984 Docket]." *In re Hours of Operation of Daytime-Only AM Broadcast Stations,* 97 F.C.C.2d 657, 670 (*"First Reconsideration Order in the 1982 Docket"*), *on further reconsideration,* 99 F.C.C.2d 1087 (1984). This decision was published in the Federal Register on April 26, 1984. *See* 49 Fed.Reg. 17,942.

Many parties submitted comments on the proposed daytimer preference. NBMC's comments opposed granting a preference to daytimers, suggesting that the Commission instead could simply lessen the demerit it ordinarily assigns to local broadcasters who are seeking an additional license in a comparative proceeding. Most parties, however, supported the preference for experienced daytimers.

In April 1985, the Commission released its *Second Report and Order* in the 1984 Docket. In the report, the Commission concluded that additional relief for daytimers was appropriate. 101 F.C.C.2d at 643. Since additional technical relief was not feasible, the Commission decided it believed that the best way to improve the daytimers' lot was to award daytimers credit in comparative proceedings. The order grants a preference to daytimers by upgrading the value of previous broadcast experience as an "integration enhancement," such that prior broadcast experience will have the same weight that already is given for the enhancement factors of minority ownership and local residence. 101 F.C.C.2d at 645.

This enhancement will be granted only if the daytimer requesting it satisfies five conditions: (1) the applicant's broadcast experience must be "based on previous substantial participation in management of a daytime-only station;" (2) the daytime-only station must be broadcasting in the same community as the proposed FM station; (3) the daytimer "must have owned the daytime-only station for three continuous years prior to designation of the FM application for hearing;" (4) the owner of the daytime-only station must "propose to be integrated in the operation of the FM station;" and (5) the daytimer "must pledge to divest itself of the daytime-only station within three years." *Id.* at 645–47.

A number of parties were not satisfied with the result and filed petitions for reconsideration. Most petitioners, including intervenor, agreed that daytimers ought to receive a preference, but suggested that the degree of preference should have been greater. NBMC argued for elimination or weakening of the preference. The Commission denied the petitions to the extent they sought changes in the daytimer enhancement. *See In re Implementation of BC Docket 80–90 to Increase the Availability of FM Broadcast Assignments,* —— F.C.C.2d ——, ——, 59 Rad.Reg.2d (P & F) 1221, 1230 (1986) ("*Reconsideration Order in the 1984 Docket*"). The Commission "decline[d] to alter the weight accorded . . . the daytime-only upgraded enhancement factor." *Id.* at ——, 59 Rad.Reg.2d (P & F) at 1228.

NBMC then petitioned this court pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. § 2342 to review the Commission's rulings in its *Second Report & Order* and *Reconsideration Order in the 1984 Docket* regarding the daytimer preference. We are asked either to invalidate the rule or to remand to the Commission for further proceedings related to petitioners' concerns.

## II.

The essence of petitioners' complaint with respect to the Commission's determination is that by giving a preference to existing daytime-only licensees, the Com-

mission has reduced the number of opportunities for minority-owned companies to be issued licenses for new FM stations. This, it is argued, represents an unannounced departure, without adequate explanation, from the Commission's past policy of encouraging minority ownership of broadcast facilities. In addition, petitioners argue that the Commission failed to explain how the public would benefit from the daytimer enhancement. Petitioners next claim that the Commission did not consider alternative proposals. Further, petitioners suggest that the Commission failed to give appropriate notice of its proposal to apply the daytimer enhancement to comparative proceedings for all new FM stations, rather than only those FM stations created by Docket 80–90.

### A.

Petitioners suggest that the Commission failed to announce and explain a departure from past policy. This argument has two strands: (1) the Commission failed to show that the daytimer enhancement policy will yield superior service to the public; and (2) the Commission inadequately considered the diminishment of opportunities for minorities.

Petitioners suggest that the Commission has failed to offer facts to support its belief that daytimers will provide superior service. We note initially that our review, though "searching and careful," *see Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), is limited to determining whether the Commission's order can be characterized as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Malrite T.V. v. FCC,* 652 F.2d 1140, 1149 (2d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982).

The Commission has set forth a number of factors, known as comparative criteria, which it considers in assessing competing qualified new applicants for one broadcast facility. *See Policy Statement on Comparative Broadcast Hearings,* 1 F.C.C.2d

393, 394–99 (1965). The Commission has characterized two of these factors as "primary": (1) diversification of control of mass media; and (2) ensuring best practicable service. *Id.* at 394; *see Second Report and Order*, 101 F.C.C.2d at 644.

■ In the *Second Report and Order* herein, the Commission stated its reasons for concluding that the daytimer enhancement will help ensure best practicable service, the second factor characterized as "primary" by the Commission. The Commission stated its observation that "daytimers have operated their facilities in the public interest in an environment with serious limitations." *Second Report and Order*, 101 F.C.C.2d at 645. In other words, broadcasters who have done a good job of serving the public under difficult conditions are especially likely to operate an FM facility in the same community in the public interest. This strikes us as a reasonable conclusion, and one within the Commission's authority.

In addition, the Commission indicates that it believes that the daytimer enhancement will "serve[ ] as an incentive to licensees in general that operation of facilities in the public interest, notwithstanding the difficulties encountered, can lead to certain added benefits." *Id.* In short, this incentive will encourage broadcasters who bear a difficult burden, such as the daytime-only restriction borne by daytimers, to provide excellent service in the hope that the Commission will reward them in the future. We cannot characterize this reasoning as irrational. Rather, it constitutes "a rational explanation of its policy founded on a predictive judgment well within its authority." *Malrite T.V.*, 652 F.2d at 1149; *see FCC v. WNCN Listeners Guild*, 450 U.S. 582, 595–96, 101. S.Ct. 1266, 1274–75, 67 L.Ed.2d 521 (1981).

We conclude that the Commission has adequately stated rational reasons for its creation of a daytimer enhancement. Petitioners suggest, however, that these reasons are outweighed by the potential reduction in opportunities for minority ownership of broadcast facilities.

Petitioners carefully and exhaustively have described the importance which has been attached by the Commission to the policy of increasing minority ownership. In addition, petitioners suggest ways in which the petitioners believe minority ownership will be discouraged by the daytimer enhancement. For example, in its petition for reconsideration before the Commission, petitioners suggested that of the 93 new Docket 80–90 stations it estimates will be assigned to communities with populations over 25,000, "all but 16 are likely to be won by the daytimers in those markets." For the sake of argument, we will accept that the daytimer enhancement may reduce the advantage afforded to minorities through the minority and local residence enhancements. And we will not dispute petitioners' contention that the Commission has for a number of years placed great importance upon its policy encouraging minority ownership. *See, e.g., In re Commission Policy Regarding the Advancement of Minority Ownership in Broadcasting*, 92 F.C.C.2d 849 (1982); *Statement of Policy on Minority Ownership of Broadcasting Facilities*, 68 F.C.C.2d 979 (1978). Nor will we dispute that the possible effect of the proposed daytimer enhancement on the already existing policy of encouraging minority ownership of broadcast facilities was an important factor to consider. *See Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) ("agency rule would be arbitrary and capricious if the agency ... entirely failed to consider an important aspect of the problem").

■ Petitioners point out that the Commission included no discussion of the possible effect of the daytimer preference on minority ownership in its *Second Report and Order*, and included only scant discussion of it in its *Reconsideration Order in the 1984 Docket*. However, we must note that the Commission did state its view of the relative importance of this consideration. In the Commission's view, "the correct balance was struck" in balancing the importance of improving the lot of daytimers with the policy of encouraging minority

ownership. *See Reconsideration Order in the 1984 Docket*, —— F.C.C.2d at ——, 59 Rad.Reg.2d (P & F) at 1227–28. While this explanation may possess "less than ideal clarity," we should uphold an agency's determination where, as here, "the agency's path may reasonably be discerned." *Motor Vehicles Manufacturers Association*, 463 U.S. at 43, 103 S.Ct. at 2867 (quoting *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).

Herein, the Commission's concern for striking a proper balance is reflected in its careful shaping of the conditions daytimers must satisfy in order to receive the benefit of the enhancement. *See Second Report and Order*, 101 F.C.C.2d at 645–47. Perhaps the most significant of these conditions is the requirement that a daytimer divest ownership of its daytime-only AM station in order to receive the enhancement in comparative proceedings for a new FM station. This will increase the number of available daytime-only AM stations, thereby reducing somewhat any adverse impact the daytimer preference might have on the diversity of ownership of broadcast facilities.

As discussed above, we are satisfied that the Commission has articulated a rational explanation for concluding that affording the daytimers an enhancement is appropriate. It also has stated a rational explanation for concluding that at this time it has found the best balance of the many interests involved. No doubt, the Commission will continue to assess the correctness of this balance in light of any relevant future developments. On the present record, we therefore decline to substitute our judgment for that of the Commission. *See Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823.

### B.

■ Petitioners also suggest that the Commission failed to consider alternative proposals which petitioners argue would advance the Commission's stated objectives. *See Motor Vehicle Manufacturers Association*, 463 U.S. at 46–51, 103 S.Ct. at 2868–70. While we agree that the Commission should consider such alternatives, it need not discuss the comparative merits of every suggestion made by parties submitting comments. *See Loyola University v. FCC*, 670 F.2d 1222, 1227 (D.C.Cir.1982). This is especially true here, where the alternative suggested by petitioners would merely change the amount of advantage the daytimers would be afforded. This amounts merely to a disagreement as to the particular weight which ought to be accorded the interests of daytimers and minorities. As discussed above, the Commission has amply supported the reasons for the degree of enhancement it created. *See id.* See Part II.A, *supra.*

Petitioners point also to an alternative approach suggested by Commissioner Rivera in his dissent from the *Second Report and Order.* However, this approach would limit any daytimer enhancement to those communities in which a daytimer is the only broadcaster, thus rewarding only those daytimers who provide the only service in a community and reducing any adverse impact on minority ownership. *See* 101 F.C.C.2d at 654 & n. 11. This approach also seems to suggest that the Commission incorrectly balanced the public interest in minority ownership and the public interest in creating a daytimer preference. We decline to second-guess this determination by the Commission, which has been entrusted by Congress with the difficult task of striking this kind of delicate balance.

### C.

■ NBMC argues that the *Notice of Rule Making in the 1984 Docket* failed adequately to give notice of the rule adopted. The Administrative Procedure Act requires that a notice of rulemaking "shall include," *inter alia*, "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3).

NBMC principally complains that while the *Notice of Rulemaking in the 1984 Docket* gave adequate notice of the proposed daytimer preference in comparative

proceedings for the six hundred FM stations created by Docket 80–90, the notice did not mention that a daytimer preference also was being considered for *all* new FM stations created in the future. Petitioners suggest that this impermissibly expanded the scope of the 1984 Docket such that the final rule adopted therein cannot be considered a "logical outgrowth" of the rule proposed in the notice of rulemaking. *See National Black Media Coalition v. FCC,* 791 F.2d 1016, 1022 (2d Cir.1986).

We first emphasize that petitioners do not argue that notice was insufficient to the extent that the final rule extends to the six hundred new FM stations created by Docket 80–90. Rather, petitioners suggest a remand on the question of whether the daytimer preference should be extended *beyond* the six hundred new stations created by Docket 80–90. The government all but concedes that the *Notice of Rulemaking in the 1984 Docket* requests comments on a proposed rule that would grant a preference to daytimers *only* in comparative proceedings for FM stations created by Docket 80–90. From this, we are asked to conclude that the final rule was beyond the scope of the notice of rulemaking.

However, in assessing the adequacy of notice we must determine "whether the agency's notice would ' "fairly apprise interested persons of the subjects and issues" [of the rulemaking].' " *National Black Media Coalition,* 791 F.2d at 1022 (quoting cases). The FCC points to several circumstances indicating that the Commission gave the public such notice as would fairly apprise the public that a daytimer preference for *all* FM comparative proceedings would be considered in the 1984 Docket. These circumstances have been outlined above, see Part I, *supra,* and we discuss them further below.

The Commission first proposed giving special consideration to daytimers applying for FM stations in 1982. *See Notice of Rulemaking in the 1982 Docket,* 47 Fed. Reg. at 38,941. In 1983 the Commission issued a report and order taking no action with respect to the proposed daytimer preference. *See In re Hours of Operation of Daytime-Only AM Broadcast Stations,* 95 F.C.C.2d at 1032 n. 1. However, on reconsideration, the Commission announced that the issue would be taken up in the 1984 Docket. *See First Reconsideration Order in the 1982 Docket,* 97 F.C.C.2d at 670 (initially published at 49 Fed.Reg. 17,942, 17,947 (1984)). Accordingly, any party interested in filing comments with respect to the daytimer preference in *all* comparative proceedings for new FM stations, as opposed to only those proceedings derived from Docket 80–90, received notice of the proposed rule in the 1982 Docket.

Petitioners suggest that they should not be expected to keep track of every pending proceeding before the FCC. However, this was not necessary. The public and, presumably, the petitioners were placed on notice of the possibility of a daytimer preference in all comparative proceedings in 1982, when the *Notice of Rulemaking in the 1982 Docket* was issued. Any persons, including petitioners, who were concerned with the possibility of a daytimer preference in all FM comparative proceedings reasonably could have been expected to follow the proceedings in the 1982 Docket. Of note, comments were filed in the 1984 Docket by a number of parties who learned of the proposed rule through the 1982 Docket.

We conclude that the notice given was adequate.

### III.

Petitioners have brought to our attention a notice of inquiry released by the Commission after argument herein. The notice of inquiry requests comment on the constitutionality of several FCC policies, including the minority preference, designed to encourage minority and female ownership of broadcast facilities. *See In re Reexamination of Commission's Comparative Licensing, Distress Sales and Tax Certificate Policies Premised on Racial, Ethnic or Gender Classifications,* 52 Fed.Reg. 596 (released Dec. 20, 1986, published Jan. 7, 1987). Presumably, this reexamination could lead to the elimination of the minority preference policy. Petitioners have made a

motion for alternative relief herein, asking that this court order the FCC to request comment in this new proceeding on the impact of the daytimer preference on minority ownership of broadcast stations.

In our view, while an elimination of the minority preference might have an effect on the balancing of interests undertaken by the FCC in this proceeding and discussed above, this later requested relief should be sought in the first instance from the FCC in the new proceeding. Accordingly, we deny the motion.

For the foregoing reasons, we deny the petition for review and affirm the rulings of the FCC.